Our next case is Padua v. King, Appeal No. 24-1718. Mr. Brown, whenever you're ready. Good morning, Your Honors. Jim Brown on behalf of Appellant. This case is a denial of Social Security Disability benefits from which the appellant is appealing. It's important to note in this case that the application for benefits was filed way back in 2010 when she was 45 years old. The reason why that date is important is because the Social Security rules for how they treat, or how they deal with treating source opinions, treating doctor's opinions, the old rules were in place at that time. The rules later changed in 2017. In this case, the ALJ found that the appellant has severe fibromyalgia, chronic fatigue syndrome, depression, and anxiety that limited her ability to work, but there were still jobs that were available in the economy that she could perform, so she was found not disabled. One of her main doctors during this period of time was a Dr. Carpenter, who was an internist that she saw about every three months. In his report, Dr. Carpenter stated that the appellant had fibromyalgia with pain, stiffness, tenderness, and swelling, and that she would need to alternate positions every 15 minutes. He thought she could sit or stand for less than a full work day. And because of sleep disturbances, she experienced daytime fatigue, and her pain affected her mental capabilities as well, and the pain and medication side effects would affect her ability to concentrate and sustain tasks. There was also opinion by a chiropractor who treated her during the same period of time, and he was also of the opinion that the pain arising from her fibromyalgia and chronic fatigue syndrome would result in her not being able to handle full-time work. It's our first contention that the court erred in affirming the ALJ's decision based on, which were basically, the ALJ's decision was based on a lack of objective findings in a fibromyalgia case. In other words, she was going to doctors, they were seeing... She was going to a chiropractor, an internist. Did she ever see a rheumatologist? She never saw a rheumatologist. She was referred to a neurologist. It seems to me that what the ALJ did here, particularly with respect to Dr. Carpenter, is disregard Dr. Carpenter's opinion, at least in part, because Dr. Carpenter's notes and his files just contained a recitation of your client's subjective symptoms. That was it. That was part of the reason why the ALJ rejected it. And what's wrong with that? What's wrong with it is the ALJ didn't delve into the treatment notes to see... Well, the ALJ isn't a doctor. No, but in a fibromyalgia case, where such a big part of the case rests on a person's subjective reports... I understand, but Mr. Brown, it's your client's burden of proof, right? And your client is seeing an internist, and the internist just repeats your client's subjective symptoms. And the internist says you have fibromyalgia. Is the ALJ just required to accept that? No, but she can't just shove it aside just because there are no objective findings. The ALJ has to look at what the plaintiff, what the appellant, is really telling her doctors. I believe that's a correct statement of the law, but can you point us to the language in the ALJ's opinion that you believe reflects a mistaken view of that? She has to look at whether there is objective evidence, right? The ALJ has to look at whether there is objective evidence, correct. She also has to look at all of the evidence. And in this case, what I'm suggesting is on the record at page 594, where the ALJ makes her decision, she makes references... Which page of the opinion? Of her opinion, it would be page 7 of her opinion. Okay, I'm there. Thank you. She makes references to the claimant reporting significant pain and fatigue, but she doesn't go into what she's really reporting. This plaintiff is reporting very severe symptoms. For instance, she's reporting on occasion that she's very tired, she falls asleep at a moment's notice, she doesn't sleep well at all. She gives really stark references in the doctor's notes to how bad the pain is. She says the pain is so bad her organs feel as if they're coming unglued. She says she has pain everywhere, morning stiffness that lasts all day, and her spine feels like it's on fire. These are contained in Dr. Carpenter's notes. Those are at record 566 and record 569. So it's my view that the ALJ, in a Fibromyalgia case, where the substance, what the person is really telling their doctors is so important, that in this case the ALJ just generally said she suffered from pain and fatigue and didn't get into the meat and bones, what was really being talked about between the plaintiff and her doctor. Mr. Brown, can I ask you, as I understand it, the government has made this point, at least somewhere during this period of asserted disability, the plaintiff was attending school to become a massage therapist? She was. And how long were those sessions on a daily basis? That's in the government's brief. They were long enough where, I'll tell you this, the government had a good point, that she was, I think the ALJ said, she says, on the one hand, my client said that she couldn't really drive more than 20 minutes, but on the other hand, though, the government points out, she was driving to this massage school for several months most days of the week. I mean, I don't think that is necessarily a good reason for discounting her testimony that she couldn't sustain work. Going to school is different than attending work and being at a job eight hours a day, five days a week. I mean, school is not as competitive as work in terms of sustaining focus and concentration for eight hours a day, five days a week. I mentioned at the beginning about how this is an old case, which is important, and the treating source opinions under the old rules should be given controlling weight when the treating doctor's opinion is well supported and not inconsistent with the other evidence in the case record. In this case, the doctor's opinion, I think, was well considered and consistent with the evidence and should be given controlling weight. I also note that even if the doctor's opinion shouldn't be given controlling weight, the rules at the time said you have to give this opinion deference. You have to defer to it to some extent. In this case, the ALJ did not. She adopted the opinions essentially of non-examining state agency doctors and overlooked the opinion of a doctor who saw this person regularly and saw their consistent complaints of significant pain and fatigue and difficulty concentrating that interfered with their ability to work. I would like to reserve two minutes for a follow-up if I can. Certainly. Okay, Ms. Johnson. Good morning. May it please the Court, I'm Victoria Johnson on behalf of Michelle King, Acting Commissioner of Social Security. I was wondering who the new Acting Commissioner is. King? Okay. Your Honor. Is the agency's website being kept up to date as to who the Acting Commissioner is? Your Honor, I'm not exactly sure. I haven't looked. Okay. We did submit something to the Court in the beginning with my appearance that it had changed. I don't think it will be that way for very long. I just wanted to answer your question, Judge Hamilton. She was going to massage school for about, she testified about two and a half months, four hours a day, five days a week, and it was about a 20-mile drive. And then I also wanted to respond to counsel's contention that the ALJ had to give deference to Dr. Carpenter's opinion. The regulations that were in effect at the time don't require deference. It requires the judge to consider whether the opinion should be given controlling weight, and that's in 404-1527. And then the Court looks to the other regulatory factors within that. So look at Judge Carpenter's specialization. He wasn't a fibromyalgia specialty. He wasn't a rheumatologist. Look at the length of the treatment. All of these things the ALJ discussed in the decision. The Court should affirm because the ALJ supported her residual functional capacity assessment with substantial evidence, including giving great weight to the opinions of two consultative examiners and four state agency reviewing doctors. Ms. Padua's argument that the ALJ cannot consider objective medical evidence when evaluating work-related limitations associated with fibromyalgia does not withstand scrutiny, as we have stated in our brief. SSR 12-2P limits the evidence to diagnose fibromyalgia. However, when there is a valid fibromyalgia diagnosis, the ALJ is required to evaluate the work-related limitations caused by that condition and the claimant's other medically determinable impairments. SSR 12-P, the Social Security Act, the agency's regulations, and case law recognize that objective findings can reflect on a claimant's functioning. SSR 12-2P provides that if the evidence does not substantiate the claimant's statements about her symptoms, the ALJ considers all of the evidence in the record. This evidence includes, for example, the claimant's daily activities and treatment notes. Here, the ALJ found that Ms. Padua's testimony on limitations was quite extreme, like needing to rest after every activity, including eating. She fell asleep after riding her exercise bike for 10 minutes. She testified she had to rest 20 minutes to 2 hours after taking a few items out of the refrigerator. The ALJ reasonably reviewed the objective medical and other evidence to determine Ms. Padua's residual functional capacity. The ALJ found, for example, that if eating and riding an exercise bike a few minutes would wear her out, it would be reasonable to expect that going to the doctor's office would do the same. But no physician documented these concerns, such as falling asleep or appearing drowsy or lethargic. Physical examinations generally did not indicate abnormal findings beyond trigger points. Even so, the ALJ partially credited Ms. Padua's testimony in assessing a residual functional capacity that was more restrictive than the opinions the ALJ gave great weight. Thus, the ALJ's conclusions regarding Ms. Padua's symptoms were reasonable and well-supported. The ALJ's discussion of Dr. Carpenter's and chiropractor Dr. Pendolino's opinions complied with the minimal articulation requirements. Turning to Dr. Carpenter's opinions, the ALJ reasonably explained the weight she gave to his opinions, applying the appropriate regulatory factors. Ms. Padua takes issue with some, but not all, of the ALJ's valid reasons that she gave for discounting Dr. Carpenter's opinion. To the extent Ms. Padua argues the ALJ should have given less weight to the objective medical evidence and more weight to her subjective allegations, this argument is really asking the court to re-weigh the evidence. Here, the ALJ reasonably found Dr. Carpenter's opinions, including that Ms. Padua could not work due to fatigue, not supported by objective findings and treatment notes. The ALJ's findings were sufficiently specific and the court should look to the decision as a whole. The ALJ found, for example, that treatment notes did not document Ms. Padua falling asleep or appearing lethargic. In addition, Dr. Carpenter always noted she was alert and oriented with appropriate effect. Ms. Johnson, do we know why this case is so old? I don't, Your Honor, and it's regrettable that it is. I looked into that and I couldn't figure out why. There was a delay at the appeals council. She had requested review. It was years. Yes, Your Honor, and we regret that. Because the ALJ's ultimate findings are supported by substantial evidence and Ms. Padua was represented by counsel throughout the process, and that hasn't been raised in the appeal. The decision is sufficient to allow the court to assess the validity of the ALJ's ultimate findings and afford meaningful judicial review. If you have no further questions, we ask that you affirm. Okay, thank you, Ms. Johnson. Mr. Brown, do you have anything you'd like to add? I appreciate counsel clarifying the massage school question that Judge Hamilton had. I note that basically if she was going four hours a day, five days a week to massage school, that's not the equivalent of a full-time work schedule, so I don't think it's indicative of a full-time job. I understood the argument to be more that that activity was simply inconsistent with her subjective complaints of pain and fatigue, where she was saying she could not drive down the block, for example. Right. I would say that in fibromyalgia cases, symptoms wax and wane over time and that there could have been a time during the period of time where she could do a little bit more but never to the point where she could sustain full-time work. Mr. Brown, all the cases we see are cases in which benefits were denied. Are there fibromyalgia and Epstein-Barr cases where benefits are awarded? Of course, Judge, and I'm not just saying this because I'm standing here in front of you, but it would be this kind of case where she's complaining about her symptoms in very stark terms to the doctor. She's saying, this is bad pain. I feel as if the pain is so bad my organs are coming unglued. My spine feels like it's on fire. These are things that she's saying, so I think this would be the kind of case that could be approved, but it depends on the ALJ. A couple of things I'd like to point out. There is, under the rules that were in place at the time, 96-2P, SSR 96-2P, did in fact say that treating source opinions, even if not given control and weight, are entitled to deference. They have to be given some deference. So I do think that because of the way the judge treated fibromyalgia and the way the judge did not give controlling weight to the treating source opinions, that this case should be remanded for further proceedings. Thank you, Mr. Brown. The case will be taken under advisement.